# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| LAMONTA WILLIS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 14-cv-9150 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| GLADYSE C. TAYLOR, Acting Director, Illinois Department of Corrections, and RICARDO TEJEDA, Warden, Stateville Correctional Center, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER AND OPINION

Plaintiff LaMonta Willis ("Plaintiff") brings this § 1983 suit against Defendants Gladyse C. Taylor ("Taylor") and Ricardo Tejeda ("Tejada") to seek redress for alleged violations of Plaintiff's constitutional right to due process under the Fourteenth Amendment. Before the Court is Defendant Tejeda's motion [26] to dismiss Plaintiff's amended complaint [24]. For the reasons stated below, the motion [26] is granted in part and denied in part. Counts I and II of the amended complaint shall not be dismissed as to Defendant Tejeda, but Plaintiff's requests for injunctive relief on those counts shall be stricken. In addition, the Court: (1) dismisses Defendant Taylor from the lawsuit without prejudice; and (2) grants Plaintiff until February 22, 2016 to file a second amended complaint consistent with this opinion.

I.  **Background**[1]

Plaintiff was formerly an inmate at the Shawnee Correctional Center ("Shawnee"). His sentence included two years parole. He was released from Shawnee on parole on January 22, 2013. His sentence was to conclude on January 22, 2015.

On January 2, 2014, a warrant was issued for Plaintiff's arrest. The record contains no facts concerning why the warrant was issued or when the conduct forming the basis for the arrest warrant occurred. On January 22, 2014, Plaintiff was taken back into custody. On January 31, 2014, Plaintiff was transferred to the Stateville Correctional Center ("Stateville") to await a hearing before the Prison Review Board. Defendant Tejeda is a warden at Stateville. Plaintiff received a hearing before the Prison Review Board on March 12, 2014. The Prison Review Board determined that Plaintiff would be required to spend the remaining time of his parole in IDOC custody.

On March 14, 2014, Plaintiff was transferred to the Lawrence Correctional Center ("Lawrence"). Plaintiff alleges that at Lawrence, "he received a false calculation for his remaining incarceration." [24] at 2. Plaintiff specifically alleges that "Lawrence calculated that Plaintiff was to be released on October 2, 2014," but that this "was erroneous because it gave Plaintiff * * * no credit for his time on parole from September 1, 2013 through January 2, 2014," when a warrant was issued for his arrest. *Id*. Plaintiff argues that if Lawrence "had calculated [his] release date correctly, the release date would have been set for July 22, 2014, rather than October 2, 2014." [24] at 3. Plaintiff does not identify who at Lawrence made the alleged

---

[1] For purposes of Tejada's motion to dismiss, the Court assumes as true all well-plead allegations set forth in the amended complaint [24]. See *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

miscalculation and does not explain why he believes he was entitled to a reduction in his sentence for the time he spent on parole between September 1, 2013 and January 2, 2014.

Between March and May 2014, Plaintiff filed multiple grievances challenging the calculation of his release date, "including one to Defendant Tejeda." [24] at 3. Specifically, on March 28, 2014, Plaintiff filed a grievance with an unidentified grievance counselor at Lawrence. The grievance was denied on May 27, 2014. According to Plaintiff, the denial did not "determine or even consider the miscalculation of time." *Id*. On April 21, 2014, Plaintiff "communicated his concerns to Stateville, which wrongfully failed and refused to calculate Plaintiff's remaining incarceration time by giving him credit for time served before the warrant was issued." *Id*. On May 11, 2014, Plaintiff filed a grievance addressed to the Prison Review Board and to the Administrative Review Board detailing the alleged sentence miscalculation. On May 13, 2014, Plaintiff filed a grievance with IDOC. IDOC responded on May 27, 2014. According to Plaintiff, IDOC's response was "woefully inadequate and deficient" and did not "address the substance of his grievance." *Id*. Instead, IDOC "directed Plaintiff to file the grievance with the Administrative Review Board, which Plaintiff already had done" two weeks earlier. *Id.* On September 10, 2014, Plaintiff received a response from the Administrative Review Board. The response "failed and refused to address the substance of Plaintiff's concerns and incarceration miscalculation," and instead "instructed Plaintiff [to] direct his concerns and complaints to the Illinois Prisoner Review Board." *Id.* at 4.

Plaintiff was released from Lawrence on October 2, 2014 to home confinement. [35] at 4. Plaintiff alleges that, as a result of "the delays" and "deficient responses" of the Prison Review Board, the Administrative Review Board, Stateville, and IDOC, "Plaintiff was denied any remedy for the miscalculation of his remaining sentence." [24] at 4.

3

On November 13, 2014, Plaintiff filed a *pro se* complaint [1] against: Salvador Godinez, the then-director of IDOC; the IDOC Administrative Review Board; the IDOC Prison Review Board; and Defendant Tejeda, a warden at Stateville. Upon its initial review of the complaint, the Court dismissed all defendants except Defendant Tejeda [5]. The Court subsequently recruited an attorney to represent Plaintiff [13] and Plaintiff's counsel filed an amended complaint on June 25, 2015 [24]. The amended complaint is brought against Tejeda and Gladyse C. Taylor, a former acting director of IDOC.

The amended complaint contains two claims. Count I alleges a "violation of due process for unconstitutional processes." [24] at 4. Plaintiff alleges that "Defendants' internal grievance processes are fundamentally flawed and unconstitutional in the manner by which they: (a) purport to calculate remaining incarceration time to be served following an arrest for parole violations; and/or (b) purport to provide remedies to inmates who seek to appeal or challenge the calculation of remaining incarceration time to be served." *Id.* Plaintiff further alleges that he "could not have obtained a writ of *habeas corpus* due to the delays and deficient responses by Defendants." *Id.* at 4-5. As a result, Plaintiff alleges, he was "deprived of his liberty and incarcerated for months beyond his correct release date." *Id.*

Count II alleges a "violation of due process for miscalculation of incarceration time." *Id.* at 5. Plaintiff alleges that Defendants "miscalculated Plaintiff's remaining incarceration time and then failed and refused to address the miscalculation despite multiple grievances filed by Plaintiff." *Id.* Plaintiff further alleges that he "could not have obtained a writ of *habeas corpus* due to the delays and deficient responses by Defendants." *Id.* As a result, Plaintiff alleges, he was deprived of his liberty and incarcerated for months beyond his correct release date. *Id.* Plaintiff requests compensatory damages and injunctive relief on Counts I and II.

On July 15, 2015, Plaintiff was incarcerated on a new charge. [35-1] at 2. Plaintiff is currently in IDOC custody at the Pontiac Correctional Center.[2]

## II. Legal Standard

Defendant Tejeda moves to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6). In reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Killingsworth*, 507 F.3d at 618. The complaint must provide the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). The Court reads the amended complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

## III. Analysis

### A. *Heck* Bar

Tejeda argues that Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because claims attacking a conviction or the length of a sentence cannot proceed as

---

[2] Plaintiff attaches to his response brief [35] an IDOC "Internet Inmate Status" print-out showing Plaintiff's custodial status as of August 11, 2015 [35-1]. Pursuant to Federal Rule of Evidence 201(b)(2), the Court also takes judicial notice of Plaintiff's current custodial status, which is available on IDOC's website. See https://www.illinois.gov/IDOC/Offender/Pages/InmateSearch.aspx (last visited January 19, 2016).

5

claims for damages under § 1983 unless the conviction or sentence has been overturned through other routes, such as *habeas corpus*. Plaintiff responds that his claims are not barred by *Heck* because Plaintiff "had no practical access to *habeas-corpus* relief" prior to his release "because of the unconstitutionally flawed sentence-calculation processes, and the purported internal remedies to address those processes." [38] at 1-2. In reply, Tejada argues that Plaintiff has not "demonstrated any excusable reason for [his] failure to seek *habeas corpus* relief" before his release from incarceration. [39-1] at 2.

The Court concludes that it would be premature to decide at the pleading stage that *Heck* bars Plaintiff's claims against Tejeda. Pursuant to *Heck*, "a § 1983 suit for damages that would necessarily imply the invalidity of the fact of an inmate's conviction, or necessarily imply the invalidity of the length of an inmate's sentence, is not cognizable under § 1983 unless and until the inmate obtains favorable termination of a state, or federal *habeas*, challenge to his conviction or sentence." *Nelson v. Campbell*, 541 U.S. 637, 646 (2004) (quoting *Heck*, 512 U.S. at 487). Thus, an inmate must first invalidate his conviction or sentence, either by direct review or in a petition for *habeas corpus*, before he can proceed with a § 1983 action that would necessarily call that conviction or sentence into doubt. *Heck*, 512 U.S. at 487; *Burd v. Sessler*, 702 F.3d 429, 432 (7th Cir. 2012). *Heck*'s application is not limited to challenges to a court's determination of the length of a criminal defendant's sentence. The Supreme Court has also "applied *Heck* in the circumstances of a § 1983 action claiming damages and equitable relief for a procedural defect in a prison's administrative process, where the administrative action taken against the plaintiff could affect credits toward release based on good time served." *Muhammad v. Close*, 540 U.S. 749, 751 (2004) (citing *Edwards v. Balisok*, 520 U.S. 641 (1997)). Under *Heck* and its progeny, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought

(damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).

Although it has given broad application to *Heck*, the Supreme Court "has not specified, in a majority holding, whether *Heck* applies where *habeas corpus* relief is unavailable" to the petitioner. *Burd*, 702 F.3d at 435 n.3. As the Seventh Circuit observed in *Burd*, five Justices in one opinion—*Spencer v. Kemna*—"expressed their views that it should not." *Id.* (citing *Spencer v. Kemna*, 523 U.S. 1, 19-21, 25 n.8 (1998)). In *Spencer*, a majority of the Supreme Court held that a *habeas* petitioner who was no longer is custody and did not seek to challenge the validity of his conviction, but only the propriety of revocation of his parole, could not satisfy Article III's case-or-controversy requirement unless he demonstrated that the revocation of his parole had collateral consequences, which he had failed to do. 523 U.S. at 8-9. The petitioner's *habeas* claim therefore was moot. *Id.* at 18. The majority also rejected the petitioner's argument that his claim was saved from mootness by the fact that *Heck* might bar him from bringing a § 1983 damages claim to redress the alleged wrongful parole revocation. *Id.* at 17. The four concurring Justices expressed concern that "any application of [*Heck*'s] favorable-termination requirement to § 1983 suits brought by plaintiffs not in custody would produce a patent anomaly: a given claim for relief from unconstitutional injury would be placed beyond the scope of § 1983 if brought by a convict free of custody (as, in this case, following service of a full term of imprisonment), when exactly the same claim could be redressed if brought by a former prisoner who had succeeded in cutting his custody short through *habeas*." *Spencer*, 523 U.S. at 20-21 (Souter, O'Connor, Ginsburg, & Breyer, JJ., concurring). The concurring Justices opined that

7

"[t]he better view * * * is that a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy." *Id.* at 21. In a dissenting opinion, Justice Stevens opined that, "[g]iven the Court's holding that petitioner does not have a remedy under the *habeas* statute, it is perfectly clear * * * that he may bring an action under 42 U.S.C. § 1983." *Id.* at 25 n. 8 (Stevens, J., dissenting).

Recognizing the view of the concurring and dissenting Justices, the Seventh Circuit held in *Burd* that *Heck* does not bar a § 1983 claim "where a plaintiff cannot obtain collateral relief to satisfy *Heck*'s favorable termination requirement." *Burd*, 702 F.3d at 435. Burd was a prisoner who brought a § 1983 claim for damages against prison officials based on allegations that they deprived him of access to the courts by preventing him from using the law library to prepare a motion to withdraw his guilty plea. *Id.* at 431. Burd did not file a *habeas* petition during his imprisonment. While his § 1983 claim was pending and on appeal to the Seventh Circuit, Burd was paroled from prison. *Id.* His parole ended a month before the Seventh Circuit issued its appellate decision. *Id*. The Seventh Circuit found that Burd's § 1983 claim was barred by *Heck*'s favorable termination requirement because Burd "*could* have sought collateral relief at an earlier time but *declined the opportunity* and waited until collateral relief became unavailable before suing." *Id.* at 436 (emphasis in original) (citing *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 601 (6th Cir. 2007); *Guerrero v. Gates*, 442 F.3d 697, 704–05 (9th Cir. 2006)). The Seventh Circuit reasoned that "[p]ermitting a plaintiff who ignored his opportunity to seek collateral relief while incarcerated to skirt the *Heck* bar simply by waiting to bring a § 1983 claim until *habeas* is no longer available undermines *Heck* and is a far cry from the

concerns, as we understand them, of the concurring Justices in *Spencer* for those individuals who were precluded by a legal impediment from bringing an action for collateral relief." *Id.*

In this case, Plaintiff's § 1983 claims—that officials at Lawrence miscalculated the remaining time that Plaintiff must serve on his conviction (Count II) and that Lawrence had no procedures to timely remedy the miscalculation (Count I)—if successful, would necessarily call into question the duration of Plaintiff's confinement. In the typical case, *Heck* would bar Plaintiff from pursuing these claims unless and until his sentence was invalidated through a *habeas* action or other opportunity for collateral relief. However, Plaintiff alleges in his amended complaint that he was unable to file a *habeas* petition prior to his release from Lawrence "due to the delays and deficient responses by Defendants" to the multiple grievances Plaintiff filed challenging the calculation of his sentence. [24] at 5, ¶¶ 25, 31. According to Plaintiff, he attempted to use IDOC's administrative procedures to have his sentence recalculated, but did not receive a substantive response and instead was shuffled from one administrative board to another from March 2014 to September 2014. [24] at 3-4, ¶¶ 14-20. Plaintiff alleges that when he finally received a response from the Administrative Review Board on September 10, 2014, he did not have sufficient time to bring an action for *habeas* relief before his release a few weeks later on October 2, 2014.

These allegations, if true, may support application of an exception to *Heck* for cases in which *habeas* review was not available due to the petitioner's release from custody. At this early stage in the case, the Court cannot say that Plaintiff "could have" filed a *habeas* petition while still incarcerated but "declined the opportunity." *Burd*, 702 F.3d at 436. Plaintiff alleges that he was still trying to exhaust Lawrence's internal procedures at the time he was released from Lawrence and exhaustion of administrative remedies typically is a prerequisite to *habeas* relief.

9

See 28 U.S.C. § 2254(b)(1) ("An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"). Plaintiff had only three weeks from the time he received a response from the Administrative Review Board until the time he was released, which Plaintiff contends was not long enough to pursue a *habeas* action.

This case bears some similarities to *Powers*, 501 F.3d at 601, a Sixth Circuit case that the Seventh Circuit cited approvingly in *Burd*, 702 F.3d at 436. In *Powers*, the Sixth Circuit held that *Heck* did not bar Powers, a former prisoner, from bringing a § 1983 claim to challenge his reckless-driving misdemeanor conviction, where Powers "was fined for his reckless-driving misdemeanor and then imprisoned for at least one, but not more than thirty, days for his failure to pay the fine." *Id.* The Sixth Circuit determined that, "[u]nder these circumstances, there is no way that Powers could have obtained *habeas* review of his incarceration," and therefore *Heck* did not bar his § 1983 action. 501 F.3d at 601.[3] Similarly, in this case, taking Plaintiff's allegations as true, Plaintiff may not have had any realistic opportunity to obtain *habeas* review of his sentence in the three weeks between the day Plaintiff received a decision from the Administrative Review Board and his release on October 2, 2014. In *Burd*, by contrast, the petitioner had time during his incarceration to file a § 1983 claim and appeal it to the Seventh

---

[3] See also, *e.g.*, *Nonnette v. Small*, 316 F.3d 872 (9th Cir. 2002) (parolee who had already fully served period of additional incarceration that resulted from revocation of good-time credits and been released from prison could maintain action for damages under § 1983 attacking revocation of credits without first obtaining writ of *habeas corpus*, even though success in action would have implied invalidity of disciplinary proceeding, since petition for *habeas* relief would have been dismissed for lack of case or controversy); *Huang v. Johnson*, 251 F.3d 65 (2d Cir. 2001) (*Heck* did not bar § 1983 claim alleging false imprisonment beyond original release date set for juvenile when he was not given credit for intervening time spend on unrelated charge in adult jail while AWOL from juvenile facility, when action was brought after juvenile was released).

Circuit and therefore had no apparent excuse for not filing a *habeas* petition while he was still in custody. 702 F.3d at 431. See also *Hadley v. Quinn*, 524 F. App'x 290, 293 (7th Cir. 2013) (*Heck* barred plaintiff's § 1983 claims challenging both his 1976 conviction and his parole revocation, where "[r]elief under § 2254 was available to" plaintiff and plaintiff "filed multiple, unsuccessful § 2254 petitions during his 33-year incarceration"). Based solely on the pleadings, this case appears to be more like *Powers* than *Burd*.

In short, Plaintiff's claim would not be barred by *Heck* if the facts show that Plaintiff could not have filed a *habeas* petition before his incarceration ended. See *Burd*, 702 F.3d at 435; *Simpson v. Nickel*, 450 F.3d 202, 306-07 (7th Cir. 2006) (explaining that *Heck* does not apply "when collateral review is unavailable—either because the plaintiff's custody has expired or because he was never 'in custody' as a result of the defendants' contested actions"); *Carr v. O'Leary*, 167 F.3d 1124, 1127 (7th Cir. 1999) (refusing to relieve state of its waiver of *Heck* defense because *Heck* did not appear to apply to plaintiff's challenge to his loss of good-time credits following plaintiff's release from prison, when *habeas* was unavailable). Cf. *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000) ("Today, we join the Second Circuit and hold that a prisoner may bring a § 1983 claim 'challenging the conditions of [his] confinement where [he] is unable to challenge the conditions through a petition for federal *habeas corpus*.'" (quoting *Jenkins v. Haubert*, 179 F.3d 19, 21 (2d Cir. 1999)). The Court cannot make this determination based on the pleadings and therefore denies Tejeda's motion to dismiss on the basis of *Heck*.

B.   **Injunctive Relief**

In both counts of the amended complaint, Plaintiff seeks "injunctive relief barring Defendants from future unlawful conduct as alleged" in those counts. [24] at 6, 7. Defendant moves to dismiss Plaintiff's request for injunctive relief on the basis that it was rendered moot by

11

Plaintiff's release from prison. [27] at 3.

The Court finds that Plaintiff's request for injunctive relief is moot. "The Constitution limits our jurisdiction to live cases and controversies." *Aljabri v. Holder*, 745 F.3d 816, 820 (7th Cir. 2014) (citing U.S. Const. art. III, § 2). "A case becomes moot when it no longer presents a case or controversy under Article III, Section 2 of the Constitution." *Eichwedel v. Curry*, 700 F.3d 275, 278 (7th Cir. 2012). In general, "'a case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Id.* (quoting *Murphy v. Hunt,* 455 U.S. 478, 481 (1982)). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726-27 (2013) (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009)). In this case, the Court finds that Plaintiff lacks a legally cognizable interest in the injunction he seeks because there is no longer any actual controversy concerning how long Plaintiff can be imprisoned for the sentence he has already fully served.

Plaintiff argues that the request for injunctive relief is not moot because: (1) Plaintiff's claim pertains to a system-wide policy of IDOC, not just the policy at one particular prison; and (2) Plaintiff is currently incarcerated within IDOC on a new charge. These facts do not save Plaintiff's request for injunctive relief from mootness because Plaintiff does not allege any facts suggesting that he has a reasonable expectation that the IDOC policies and practices he challenges—the calculation of remaining prison time following a parole violation and the procedure (or lack thereof) for correcting sentence miscalculations—will have any effect on Plaintiff in the future. Plaintiff is essentially arguing for application of the "capable of repetition, yet evading review" doctrine, which "applies only in exceptional situations" where "two

circumstances [are] simultaneously present: (1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Spencer*, 523 U.S. at 17 (internal quotation marks and citations omitted). Plaintiff has not alleged that "the time between parole revocation and expiration of sentence is always so short as to evade review," "[n]or has he demonstrated a reasonable likelihood that he will once again be paroled and have that parole revoked" such that IDOC's challenged policies would affect him. *Id.* at 18 (declining to apply the "capable of repetition" exception to mootness doctrine in order to hear *habeas* challenge to revocation of petitioner's parole after petitioner was released from prison, where petitioner failed to demonstrate either that the time between parole revocation and expiration of sentence was always so short as to evade review, or that there was reasonable likelihood that he would once again be paroled and have his parole revoked). See also *Eichwedel v. Curry*, 700 F.3d 275, 279-81 (7th Cir. 2012) (inmate's *habeas* challenge to IDOC's revocation of his good-time credits, as penalty for filing frivolous motions against prison officials, did not fall within exception to mootness doctrine for disputes capable of repetition yet evading review once inmate's credits were restored; even if dispute would recur and evade review for prisoners with short sentences until Illinois determined whether revocation required court to specifically determine that frivolous filing could result in loss of credits, there was no reasonable expectation dispute would recur for inmate, who had not indicated intent to file frivolous pleadings should he be returned to prison).

Plaintiff compares this case to *Lehn v. Holmes*, 364 F.3d 862 (2004), in which the Seventh Circuit found that a prisoner's complaint, which challenged IDOC's practice of housing nonsmoking inmates in the same cell as smoking inmates, was not rendered moot by plaintiff's

transfer from the Big Muddy River Correctional Center to the Graham Correctional Center. *Id.* at 871-72. The court found that the prisoner adequately "allege[d] a concrete, particularized, actual injury" that "would be redressable by a decision forcing IDOC to change its practices," by pleading that "IDOC's practice threatens his future health and causes him presently to suffer from headaches and burning eyes." *Id.* at 871. Unlike the plaintiff in *Lehn*, Plaintiff has not alleged any facts suggesting that IDOC's challenged policies threaten his future freedom or cause him presently to suffer any consequences.

For these reasons, the Court grants Tejeda's motion to dismiss Plaintiff's request for injunctive relief.

## IV. Conclusion

For the reasons stated above, the Court grants in part and denies in part Defendant Tejeda's motion to dismiss [26]. Counts I and II of the amended complaint shall not be dismissed as to Defendant Tejeda, but Plaintiff's requests for injunctive relief on those counts shall be stricken. The Court also: (1) dismisses without prejudice Plaintiff's complaint against Defendant Taylor pursuant to Rule 4(m) of the Federal Rules of Civil Procedure[4]; and (2) grants

---

[4] The Court is dismissing Defendant Taylor because there is no indication on the docket sheet that she was served with the amended complaint within 120 days as required by the then-current version of Rule 4(m) of the Federal Rules of Civil Procedure (as of December 1, 2015, the period was reduced to 90 days). Plaintiff may still add Taylor as a defendant if the facts warrant. The Court notes, however, that it is not clear that Taylor is a proper party to this action. A state official may be sued in his or her *individual* capacity for damages only where the official "caused or participated in an alleged constitutional deprivation." *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) (emphasis in original). "[I]ndividual-capacity claims cannot rest on a *respondeat superior* theory." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). A state official may be sued in his or her *official* capacity for prospective relief, such as an injunction, but not for damages. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 & n.10 (1989). When officials sued in their official capacity in federal court leave office, their successors automatically assume their roles in the litigation. Fed. R. Civ. P. 25(d). In his amended complaint, Plaintiff does not allege any facts suggesting that Taylor personally caused or participated in the deprivation of his right to due process, such that Taylor would be subject to a § 1983 suit in her individual capacity. Taylor is not subject to suit for injunctive relief in her official capacity, because she is no longer the Acting Director of IDOC. See https://www.illinois.gov/idoc/aboutus/Pages/director.aspx (last visited

Plaintiff until February 22, 2016 to file a second amended complaint consistent with this opinion.

Dated: January 22, 2016 _____

Robert M. Dow, Jr.
United States District Judge

---

January 19, 2016). Plaintiff's counsel should consider whether the facts support including Taylor in this case or naming some other IDOC officials as defendants in this action. Finally, the Court notes that although Plaintiff alleges that the miscalculation of his remaining sentence occurred at Lawrence, Plaintiff has not named any Lawrence officials as defendants. Plaintiff's counsel should consider whether the facts warrant adding any Lawrence officials as defendants (or suing a "Doe" defendant and conducting discovery to determine the identity of any unknown Lawrence officials who participated in the alleged deprivation of constitutional rights).