IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAMONTA WILLIS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 14-cv-9150 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| RICARDO TEJEDA, RANDY PFISTER, STEPHEN DUNCAN, DOES 1 THROUGH 10 AS UNKNOWN OFFICIALS, OFFICERS, AND/OR EMPLOYEES AT LAWRENCE CORRECTIONAL CENTER, DOES 11 THROUGH 20 AS UNKNOWN OFFICIALS, OFFICERS, AND/OR EMPLOYEES AT ILLINOIS PRISONER REVIEW BOARD, and ILLINOIS DEPARTMENT OF CORRECTIONS, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER AND OPINION

Plaintiff LaMonta Willis ("Plaintiff") brings this § 1983 suit against Defendants Ricardo Tejeda ("Tejeda"), Randy Pfister ("Pfister"), Stephen Duncan ("Duncan"), the Illinois Department of Corrections ("IDOC"), and unknown officials, officers, and employees of the Lawrence Correctional Center ("Lawrence") and the Illinois Prisoner Review Board ("IPRB") to seek redress for alleged violations of Plaintiff's constitutional right to due process and deprivation of his liberty under the Fourteenth Amendment. Before the Court is Defendant Tejeda's motion [45] to dismiss Plaintiff's second amended complaint [44]. For the reasons stated below, the motion [45] is denied.

I.  **Background**[1]

Plaintiff was formerly an inmate at the Shawnee Correctional Center ("Shawnee"). His sentence included two years parole. He was released from Shawnee on parole on January 22, 2013. His sentence was to conclude on January 22, 2015.

On January 2, 2014, a warrant was issued for Plaintiff's arrest and on January 22, 2014, Plaintiff was taken back into custody. On January 31, 2014, Plaintiff was transferred to the Stateville Correctional Center ("Stateville") to await a hearing before the IPRB. Defendant Tejeda is a Warden at Stateville. Defendant Does 11 through 20 are unknown officials, officers, and/or employees of the IPRB. Tejeda and all of the other individual defendants are employed by Defendant IDOC. Plaintiff received a hearing before the IPRB on March 12, 2014. The IPRB determined that Plaintiff would be required to spend the remaining time of his parole in IDOC custody.

On March 14, 2014, Plaintiff was transferred to Lawrence. Defendant Duncan is the Warden at Lawrence and Defendant Does 1 through 10 are unknown officials, officers, and/or employees at Lawrence. Plaintiff alleges that at Lawrence, "he received a false calculation for his remaining incarceration." [44] at 3. Plaintiff specifically alleges that "Lawrence calculated that Plaintiff was to be released on October 2, 2014," but that this "was erroneous because it gave Plaintiff no credit for his time on parole from September 1, 2013 through January 2, 2014," when a warrant was issued for his arrest. *Id*. at 3-4. According to Plaintiff, January 2, 2014 was "the correct starting point to calculate his remaining time to serve" and if Lawrence "had calculated [his] release date correctly, the release date would have been set for July 22, 2014, rather than October 2, 2014." [44] at 4.

---

[1] For purposes of Tejeda's motion to dismiss, the Court assumes as true all well-pled allegations set forth in the second amended complaint [44]. See *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Between March and May 2014, Plaintiff filed multiple grievances challenging the calculation of his release date, "including one to Defendant Tejeda." [44] at 4. Specifically, on March 28, 2014, Plaintiff filed a grievance with "Counselor Ray" at Lawrence. *Id*. Plaintiff received a response on May 27, 2014. According to Plaintiff, the denial did not "determine or even consider the miscalculation of time." *Id*. On April 21, 2014, Plaintiff "communicated his concerns to Stateville, which wrongfully failed and refused to calculate Plaintiff's remaining incarceration time by giving him credit for time served before the warrant was issued." *Id*. On May 11, 2014, Plaintiff filed a grievance addressed to the IPRB and the Administrative Review Board detailing the alleged sentence miscalculation. On May 13, 2014, Plaintiff filed another grievance with IDOC. IDOC responded on May 27, 2014. According to Plaintiff, IDOC's response was "woefully inadequate and deficient" and did not "address the substance of his grievance." *Id*. Instead, IDOC "directed Plaintiff to file the grievance with the Administrative Review Board, which Plaintiff already had done" two weeks earlier. *Id.*

On September 10, 2014, Plaintiff received a response from the Administrative Review Board. The response, which was dated July 12, 2014, "failed and refused to address the substance of Plaintiff's concerns and incarceration miscalculation," and instead "instructed Plaintiff [to] direct his concerns and complaints to the [IPRB]." [44] at 5.

Plaintiff alleges that, as a result of "the delays" and "deficient responses" of the IPRB, the Administrative Review Board, Stateville, and IDOC, he was "denied any remedy for the miscalculation of his remaining sentence." [24] at 4. Plaintiff was released from Lawrence on October 2, 2014.

On November 13, 2014, Plaintiff filed a *pro se* complaint [1] against Salvador Godinez, the then-director of IDOC; the IDOC Administrative Review Board; the IDOC Prison Review

3

Board; and Tejeda. Upon its initial review of the complaint, the Court dismissed all defendants except Tejeda [5]. The Court subsequently recruited an attorney to represent Plaintiff [13] and Plaintiff's counsel filed a first amended complaint on June 25, 2015 [24]. The first amended complaint was brought against Tejeda and Gladyse C. Taylor, ("Taylor") a former acting director of IDOC. Tejeda's moved to dismiss the amended complaint. See [26]. The Court granted in part and denied part the motion. See [43]. The Court denied Tejeda's motion to dismiss Counts I and II of the first amended complaint but struck Plaintiff's requests for injunctive relief on those counts, on the ground of mootness. The Court also dismissed Taylor as a defendant due to Plaintiff's failure to serve her with the amended complaint. The Court granted Plaintiff until February 22, 2016 to file a second amended complaint consistent with its opinion.

Plaintiff filed his second amended complaint [44] on February 22, 2016. The second amended complaint contains two claims. Count I alleges a "violation of due process for unconstitutional processes." [44] at 6. Plaintiff alleges that Defendants violated his due process rights by "refusing to respond [to], ignoring, [and] misdirecting" him and "interfering with [his] ability to obtain a fair, constitutional grievance process." *Id.* Plaintiff also alleges that "Defendants' internal grievance processes are fundamentally flawed and unconstitutional in the manner by which they: (a) purport to calculate remaining incarceration time to be served following an arrest for parole violations; and/or (b) purport to provide remedies to inmates who seek to appeal or challenge the calculation of remaining incarceration time to be served." *Id.* Plaintiff further alleges that he "could not have obtained a writ of *habeas corpus* due to the delays and deficient responses by Defendants." *Id.* As a result, Plaintiff alleges, he was "deprived of his liberty and incarcerated for months beyond his correct release date." *Id.*

Count II alleges a "violation of due process for miscalculation of incarceration time." [44] at 7. Plaintiff alleges that Defendants "miscalculated Plaintiff's remaining incarceration time and then failed and refused to address the miscalculation despite multiple grievances filed by Plaintiff." *Id.* Plaintiff further alleges that there were "no procedures to remedy Defendants' delays" and that he "could not have obtained a writ of *habeas corpus* due to the delays and deficient responses by Defendants." *Id.* As a result, Plaintiff alleges, he was deprived of his liberty and incarcerated for months beyond his correct release date. *Id.* Plaintiff requests compensatory damages on Count I and compensatory damages, costs, and fees on Count II, in addition to any further relief the Court deems just and appropriate. Plaintiff has removed his request for injunctive relief, as directed by the Court in its order granting in part and denying in part Tejeda's motion to dismiss the first amended complaint.

## II. Legal Standard

Defendant Tejeda moves to dismiss the second amended complaint under Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss under Rule 12(b)(6), plaintiff's complaint must allege facts which, when taken as true, 'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court "accept[s] all well-pleaded facts as true and draw all reasonable inferences in plaintiff's favor." *Id.* at 600 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). The Court reads the second amended complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

## III. Analysis

Tejeda's first two arguments in support of his motion to dismiss characterize Plaintiff's

claims as claims for violation of his right to substantive due process. See [46] at 2-4. Plaintiff states in response that he is not asserting substantive due process claims. See [50] at 2. Therefore, the Court finds it unnecessary to address Tejeda's first two arguments and moves directly to Tejeda's argument that Plaintiff fails to allege a claim for violation of his right to procedural due process.

Tejeda argues that Plaintiff has no procedural due process claim because, pursuant to *Toney-El v. Franzen*, 777 F.2d 1224, 1225-28 (7th Cir. 1985), a prisoner who claims he is being held beyond his release date has sufficient remedies available to him in state court, including a writ of habeas corpus, a writ of mandamus, and a claim for false imprisonment. The Court "undertake[s] a two-part analysis in procedural due-process cases": first, it determines "whether the plaintiff was deprived of a protected interest; and if so, it determines "what process was due under the circumstances." *Hess v. Bd. of Trustees of S. Illinois Univ.*, No. -- F.3d --, 2016 WL 5940051, at *3 (7th Cir. Oct. 13, 2016).

Counts I and II of Plaintiff's second amended complaint satisfy the first part of this analysis by pleading that Plaintiff was deprived of a protected liberty interest when he was incarcerated months past the date he should have been released if he had been properly credited for time served. [44] at 6-7. Despite Tejeda's claim to the contrary, *Toney-El* makes clear that a prisoner has "a constitutionally protected liberty interest in being released from prison before the end of his term for good behavior." *Toney-El*, 777 F.2d at 1226; see also *Figgs v. Dawson*, 829 F.3d 895, 906 (7th Cir. 2016) (same).

Tejada also argues that "the facts pled by Plaintiff demonstrate that he was not incarcerated past his release date." [51] at 2. But in fact, Plaintiff alleges that if Lawrence had calculated his release date correctly—by determining his remaining time to serve by using

January 2, 2014 as a starting date—he would have been released on July 22, 2014, rather than October 2, 2014. See [44] at 8. Therefore, the Court concludes that Plaintiff has adequately pled that he was deprived of a protected liberty interest.

Turning to the second part of the procedural due process analysis, Tejada argues that pursuant to *Toney-El*, Defendants provided Plaintiff with all the process he was due through the "informal written procedure for challenging sentence calculation" and the "right to seek a writ of mandamus from the state court, or [to] file[] a cause of action in the Illinois courts for false imprisonment." [51] at 3 (citing *Toney-El*, 777 F.2d at 1228). Plaintiff responds that *Toney-El* does not bar procedural due-process claims in all cases challenging erroneous sentence calculations. According to Plaintiff, *Toney-El* distinguishes between section 1983 actions "challenging the mistakes made by state employees" and actions challenging "the state procedures by which those mistakes were made." 777 F.2d at 1227. *Toney-El* involved the first type of claim, and whether the district court erred by directing a verdict in the plaintiff's favor. The Seventh Circuit reversed the district court, finding that the plaintiff's procedural due process rights were not violated because he "could have informally informed prison officials about the error in calculating his release date through correspondence" or sought "a writ of mandamus from the state court to correct the error." *Id.* at 1228. Plaintiff argues that his procedural due process claims fall into this second category, because the second amended complaint "focuses directly on Defendants' unconstitutionally flawed processes, not a simple or isolated miscalculation or mistake." [50] at 4.

The Court agrees that the second amended complaint challenges, at least in part, the Defendants' procedures. See [44] at 5 (Defendants "failed to develop and implement policies and/or procedures that would have prevented Plaintiff from suffering the miscalculation of his

7

remaining sentence time and the consequences thereof"); 6 ("Defendants' internal grievance processes are fundamentally flawed and unconstitutional" and "there were no procedures to remedy Defendants' delays for Plaintiff to obtain relief"); 7 ("There were no procedures to remedy Defendants' delays for Plaintiff to obtain relief"). Therefore, the Court need not evaluate the adequacy and availability of Plaintiff's remedies under state law to determine whether Plaintiff has stated a claim for violation of his right to procedural due process. See *Figgs*, 829 F.3d at 907 (explaining that section 1983 claims challenging the mistakes of state employees, rather than the state procedures by which the mistakes were made, require the court to consider the adequacy and availability of remedies under state law (citing *Parratt v. Taylor,* 451 U.S. 527 (1981)); *Russell v. Lazar*, 300 F. Supp. 2d 716, 721 (E.D. Wis. 2004) ("If the prisoner alleges that the failure of state officials to properly administer the state's procedures caused the deprivation, the court must consider the availability and adequacy of postdeprivation remedies under state law before concluding that due process was violated. However, if the prisoner alleges that the state maintained insufficient predeprivation procedures, the court need not consider whether adequate postdeprivation procedures were available.").

*Toney-El* evaluated a claim that the state procedures by which mistakes in calculating the plaintiff's release date were made violated his right to due process. On that claim, the Seventh Circuit reversed the district court's directed verdict in favor of the plaintiff based on its finding that IDOC's method of reviewing challenges to calculation of custody or release dates, which was based on purely mathematical calculations, satisfied the dictates of procedural due process. *Toney-El*, 777 F.2d at 1229. In this case, by contrast, Plaintiff does not allege that IDOC has a method of reviewing challenges to the calculation of release dates using mathematical calculations; instead, Plaintiff alleges that Defendants had "no procedures" to timely remedy

8

sentence calculations before holding inmates beyond their release dates. See [44] at 5. While facts that may be presented to the Court at the summary judgment stage may defeat Plaintiff's assertion, at this stage of the case the Court is required to accept Plaintiff's well-pled allegations as true. *Cochran*, 828 F.3d at 600.

Other courts in this circuit have found similar allegations sufficient to survive motions to dismiss claims for violations of procedural due process. For example, in *Young v. Sheahan*, 1999 WL 1044935, at *2 (N.D. Ill. Nov. 12, 1999), the court held that the plaintiff stated a § 1983 procedural due process against the Cook County sheriff in his official capacity by alleging that he was wrongfully detained as the result of a "policy, custom or practice of the defendants * * * not to conduct any investigation under any circumstances of claims of mistaken detention made by pretrial detainees." Similarly, in *Fuentes v. Sheahan*, 2004 WL 1611607, at *4 (N.D. Ill. July 19, 2004), the court concluded that the plaintiff stated a § 1983 procedural due process claim against the Cook County Sheriff in his official capacity by alleging that the County had a custom, practice, and policy that permits the detention of inmates after they have been ordered released by the Circuit Court.

Tejeda does not address *Fuentes*, but attempts to distinguish *Young* on the basis that it involved "an official capacity claim against a municipality," whereas Plaintiff's claim is against Tejeda (a state official) in his individual capacity. According to Tejeda, § 1983 does not authorize Plaintiff to seek damages against a state official in his or her official capacity. [51] at 3 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). However, that is beside the point, since Plaintiff brings suit against Tejeda in his individual capacity.[2] Tejeda has made no

---

[2] Although the second amended complaint does not specify the capacity in which Tejeda is being sued, the Court assumes that it is in his individual capacity, because a suit against a prison official in his official capacity is considered to be against the government entity of which he is a part, and section 1983 does not authorize suits against states. *Sanville v. McCaughtry*, 266 F.3d 724, 732–33 (7th Cir. 2001); cf. *Indiana*

attempt to demonstrate that Plaintiff is precluded from bringing a § 1983 suit for damages against Tejeda (a state official) in his individual capacity, or that Plaintiff's pleading of such a claim is deficient. "[T]o establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right," *Kentucky v. Graham*, 473 U.S. 159, 166 (1985), through "some personal participation * * * in the alleged deprivation of [the plaintiff's] constitutional rights." *Rangel v. Brown*, 445 F. Supp. 2d 936, 938 (N.D. Ill. 2006). The second amended complaint alleges that Tejeda and other named defendants "failed to develop and implement policies and/or procedures that would have prevented Plaintiff from suffering the miscalculation of his remaining sentence time and the consequences thereof," [44] at 5, and that Tejeda never provided a direct response to a grievance that Plaintiff filed with him between March and May 2014, [44] at 4. In the absence of any argument to the contrary by Tejeda, the Court finds these allegations sufficient to state a procedural due process claim against Tejeda in his individual capacity.

By comparison, in *Russell*, 300 F. Supp. 2d at 722, the court held that an inmate alleged sufficient facts to establish state correctional officials' § 1983 liability for violating his right to procedural due process in the alleged miscalculation of his prison sentence, where the officials allegedly ignored his requests to recalculate his sentence and he was held 65 days beyond his mandatory release date. While it was unclear whether the inmate alleged that his incarceration was due to officials' pre-deprivation mistakes or inadequate post-deprivation procedures, the court construed the complaint liberally and found that the inmate stated a claim. The court explained that "[i]f defendants had no procedures in place for addressing such requests and for that reason ignored him, plaintiff could prevail on his procedural due process claim." *Id.* Tejeda

---

*Prot. & Advocacy Servs. v. Indiana Family & Soc. Servs. Admin.*, 603 F.3d 365, 370 (7th Cir. 2010) ("If properly raised, the [Eleventh] [A]mendment bars actions in federal court against a state, state agencies, or state officials acting in their official capacities.").

argues that *Russell* actually supports his position, because it recognizes that in *Toney-El* "Illinois' informal written review procedure for dealing with challenges to sentence calculations was [determined to be] adequate to satisfy due process." *Id.* But this Court, like the court in *Russell*, "cannot determine from the complaint" whether Defendants use the same procedure that the court found adequate in *Toney-El* years ago. *Id.* at 723.

## IV. Conclusion

For the reasons stated above, the Court denies Defendant Tejeda's motion to dismiss [45].

Dated: November 18, 2016

Robert M. Dow, Jr.
United States District Judge