# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LAMONTA WILLIS, ) | |
| ) | |
| Plaintiff, ) | Case No. 14-cv-9150 |
| ) | |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| RICARDO TEJEDA and ) | |
| STEPHEN DUNCAN, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff LaMonta Willis ("Plaintiff") brings suit against Defendants Ricardo Tejeda ("Tejeda") and Stephen Duncan ("Duncan") (collectively, "Defendants") to seek redress under 42 U.S.C. § 1983 for alleged violations of his right to procedural due process arising out of an alleged miscalculation of a prison sentence. Before the Court is Defendants' motion for summary judgment [95]. For the reasons stated below, the Court grants Defendants' motion [95]. Judgment will be entered in favor of Defendants Tejeda and Duncan and against Plaintiff. This order resolves all claims in the case.[1] Civil case terminated.

### I. Background

The Court takes the relevant facts primarily from the parties' Joint Statement of Undisputed Material Facts [87]. The Court has subject matter jurisdiction over this action pursuant to 28

---

[1] Defendants Randy Pfister and the Illinois Department of Corrections were voluntarily dismissed from the suit on December 20, 2016. See [65], [66]. Defendants Salvador Godinez, the Administrative Review Board, and the Prisoner Review Board were dismissed upon the Court's initial review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A. See [5]. The caption of Plaintiff's case also includes a number of Doe Defendants, but Plaintiff has made no efforts in the last four-plus years to identify any additional defendants.

U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4). Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the events involved in the lawsuit occurred in this district.

Plaintiff was incarcerated in the Shawnee Correctional Center until his release on January 22, 2013. Plaintiff was sentenced to two years parole, which was to conclude on January 22, 2015.

On September 1, 2013, while on parole, Plaintiff was arrested by the Carbondale Police Department. On November 5, 2013, Plaintiff was arrested again for "Issuance of a Warrant." [87] at 2. On January 2, 2014, a warrant was issued for Plaintiff's arrest. On January 22, 2014, Plaintiff was arrested for a third time, charged with burglary, and taken back into custody. On January 23, 2014, IDOC issued a mandatory supervised release violation report. See [87-1].

On January 31, 2014, Plaintiff was transported to Stateville Correctional Center ("Stateville"), in advance of a March 12, 2014 hearing before the Illinois Prison Review Board ("IPRB"). Defendant Tejeda was a Warden of Stateville at that time. At the March 12 hearing, the IPRB determined that Plaintiff was to spend the remaining time of his parole in IDOC custody. The IPRB also "determined Plaintiff to be a violator as of September 1, 2013." [87] at 3. The IPRB's order therefore shows that "Plaintiff was "[d]eclared a violator as of 9-1-13 on * * * Mandatory Supervised Release." [87-4].

On March 14, 2014, Plaintiff was transferred to Lawrence Correctional Center ("Lawrence"), where he received a temporary calculation for his remaining incarceration time to determine a tentative discharge date. Defendant Duncan was the Warden of Lawrence at that time. Lawrence calculated that Plaintiff was to be released on October 2, 2014. On May 23, 2014, the temporary calculation form was replaced by "DCA 1324," which also calculated Plaintiff's release date as October 2, 2014. [87] at 3.

2

The Administrative Directive for "Mandatory Supervised Release Violators Sentenced Under 1978 Law" ("Directive") governs the calculation of Plaintiff's prison time and contains the following relevant provisions:

(1) The issuance of a mandatory supervised release violation warrant tolls the running of a sentence credit. Sentence credit shall not be resumed until the date a revocation hearing is held by the Prisoner Review Board. The offender shall then receive credit for time spent in custody which was not credited against another sentence.

(2) The period of time between the date the Prisoner Review Board declared the releasee a violator and the recustody date or the new sentence date shall be calculated as time lost as a mandatory release violator. ***

[87] at 4 (quoting [87-7] at 2-3 (Admin. Dir. 01.07.424 II(D))).

In his governing Second Amended Complaint, Plaintiff contends that Lawrence's calculation of his release date as October 2, 2014 "was erroneous because it gave Plaintiff no credit for his time on parole from September 1, 2013 through January 2, 2014, which is the date on which a warrant was issued for Plaintiff's arrest (and the correct starting point to calculate his remaining time to serve)." [44] at 3-4. Plaintiff asserts that if Lawrence had calculated his release date correctly, the release date would have been July 22, 2014, rather than October 2, 2014.

Plaintiff alleges—and Defendants deny on the basis of lack of knowledge—that he filed multiple grievances between March and May 2014 regarding the miscalculation of his remaining sentence (including one to Tejeda), but never received a direct response. See [70] at 5 (Answer).[2] Plaintiff also alleges, and Defendants admit, that Plaintiff filed additional grievances with IDOC in May 2014, to which IDOC responded by telling Plaintiff to file a grievance with IDOC's Administrative Review Board, which Plaintiff had already done. See id. at 6-7. Plaintiff further

---

[2] The parties' Joint Statement of Undisputed Material Facts does not include any facts concerning Plaintiff's grievances or IDOC's grievance procedures. Therefore, the facts set forth in this paragraph are drawn from the pleadings.

3

alleges, but Defendants deny, that he finally received a response from the Administrative Review Board on September 10, 2014, which "failed and refused to address the substance of [his] concerns and incarceration miscalculation" and instead directed him to complain to the IPRB. *Id.* at 7. Plaintiff contends that these delays and deficient responses denied him any remedy for the miscalculation of his remaining sentence. *Id.* Based on these allegations, Plaintiff brings two claims under 42 U.S.C. § 1983 for alleged violation of his right to procedural due process. Count I is based on IDOC's allegedly insufficient grievance process, while Count II is based on Defendants' alleged miscalculation of Plaintiff's incarceration time.

Currently before the Court is Defendants' motion for summary judgment.

## II. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by *** citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532-33 (7th Cir. 2013) (citation omitted).

To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250. Summary judgment is proper if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Ellis v. CCA of Tennessee LLC,* 650 F.3d 640, 646 (7th Cir. 2011) (quoting *Celotex,* 477 U.S. at 322). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Liberty Lobby*, 477 U.S. at 252.

## III. Analysis

Both of Plaintiff's claims allege a violation of procedural due process. "The two elements of a procedural due process claim are '(1) deprivation of a protected interest and (2) insufficient procedural protections surrounding that deprivation.'" *Tucker v. City of Chicago*, 907 F.3d 487, 491 (7th Cir. 2018) (quoting *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008)). Defendants argue that they are entitled to summary judgment because, based on the undisputed facts in the record, Plaintiff cannot establish either element of a procedural due process claim.

The Court agrees with Defendants that Plaintiff was not deprived of a protected interest and therefore finds it unnecessary to reach the question of whether Plaintiff was provided with sufficient procedural protections. See *Johnson v. Thompson-Smith*, 203 F. Supp. 3d 895, 906 (N.D. Ill. 2016) ("Only after finding the deprivation of a protected interest do courts look to whether the State's procedures comport with due process.") (citing *American Mfrs. Mut. Ins. Co.*

5

*v. Sullivan*, 526 U.S. 40, 59 (1999)). As the parties all recognize, "[t]he deprivation of a statutory right to credit toward a prisoner's sentence is a deprivation of liberty that requires due process of law." *Donelson v. Pfister*, 811 F.3d 911, 915 (7th Cir. 2016); see also *Figgs v. Dawson*, 829 F.3d 895, 906 (7th Cir. 2016); *Toney-El v. Franzen*, 777 F.2d 1224, 1226 (7th Cir. 1985). Here, however, it is apparent from the undisputed facts in the record that Plaintiff did not have a right to the sentencing credits that he alleges he should have received.

Resolving this issue requires the Court to interpret section 01.07.424 II(D) of the Directive.[3] Subsection II(D)(2) states, in relevant part, that "[t]he period of time between *the date the Prisoner Review Board declared the releasee a violator* and the recustody date or the new sentence date shall be calculated as time lost as a mandatory supervised release violator." [87-7] at 2-3 (Admin. Dir. 01.07.424 II(D)(2) (emphasis added)). The parties disagree on the meaning of the italicized language. Defendants contend that it means the date that the releasee became a violator—*i.e.* the date that the parole violation occurred. Plaintiff argues instead that it means the date on which the IPRB makes its determination that the releasee committed a parole violation.

Subsection II(D)(2) of the Directive is inartfully drafted and ambiguous on its face. However, Defendants' reading of this provision is the only logical one in light of the parole scheme, the governing Illinois statute, the Directive's surrounding language, and the IPRB order

---

[3] As a preliminary matter, the Court must decide whether the interpretation of the Directive is an appropriate subject for summary judgment. While Defendants contend that it is, Plaintiff asserts that "[a]t a bare minimum, Defendants' interpretation of [the Directive] raises factual issues that cannot be adjudicated on summary judgment and necessitate the resolution thereof by a fact-finder." [100] at 8. However, Plaintiff does not identify any factual issues that must be resolved in order to interpret the Directive. Further, "the interpretation of contractual and regulatory terms is generally a question of law" and the parties have identified "[n]o special consideration [that] prevents" the interpretation of the Directive "from being resolved at summary judgment." *United States ex rel. Garbe v. Kmart Corp.*, 824 F.3d 632, 645 (7th Cir. 2016) (citing *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014); *Urso v. United States*, 72 F.3d 59, 60 (7th Cir. 1995)). Therefore, the Court will resolve the parties' interpretative dispute in this summary judgment order.

declaring Plaintiff to be a parole violator. "The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Morrissey v. Brewer*, 408 U.S. 471, 477 (1972). "The enforcement leverage that supports the parole conditions derives from the authority to return the parolee to prison to serve out the balance of his sentence if he fails to abide by the rules." *Id*. at 478-79. In Illinois, this leverage is set out by statute. See 730 ILCS 5/3-3-9. The statute provides that when a parolee violates a condition of his mandatory supervised release, he shall be "recommit[ted] for the total mandatory supervised release term, less the time elapsed between the release of the person and the commission of the violation for which mandatory supervised release is revoked." 730 ILCS 5/3-3-9. In other words, once the releasee is recommitted following a parole violation, he receives sentencing credit only for the time during which he was on release and *not* in violation of the conditions of his release.

Defendants' reading and application of subsection II(D)(2) of the Directive is consistent with this statute because it properly deprives Plaintiff of credit for the time during which he remained out of custody but in violation of the conditions of his release. The IPRB determined that Plaintiff was a violator as of September 1, 2013, and therefore the time Plaintiff remained on parole and out of custody from September 1, 2013 through his arrest on January 22, 2014 (when he was recommitted) was "time lost" pursuant to the Directive. Consistent with this determination, the order implementing the IPRB's decision unambiguously shows that Plaintiff was "[d]eclared a violator as of 9-1-13 on *** Mandatory Supervised Release." [87-4]. Further, as Defendants point out, it makes logical sense that the date listed first in the Directive (the date the releasee is a violator) comes first in time (before the recustody date), as Defendants' reading proposes.

Plaintiff's contrary reading of subsection II(D)(2) is illogical. It would require the IPRB to count as "time lost" the period of time between which the releasee is returned to custody ("the recustody date") and the date the IPRB issues a decision on whether the releasee committed an earlier violation of the conditions of his parole. See [100] at 7 (arguing that subsection II(D)(2) "pegs an inmate's 'time lost' to 'the date the [IPRB] declared the releasee a violator' (here, March 12, 2014), not the date designated by the PRB as the date of the alleged parole violation (here, September 1, 2013)"). There is no reason this time should be "lost" for sentencing credit purposes—the releasee is in custody. In Plaintiff's case, it turns out that the time he spent in custody awaiting the IPRB's decision was shorter than the period during which he was out of custody but in violation of the terms of his release—which explains why Plaintiff wants the former period to be the one that counts as "time lost." But this will not always be the case, and it makes no sense to punish parole violators who remain in custody for a longer period of time awaiting a decision from the IPRB. Further, Plaintiff's reading of Subsection II(D)(2) would create tension with subsection II(D)(1)'s requirement that, at the IPBR hearing, an offender "receive credit for time spent in custody which was not credited against another sentence"—in this case, January 22, 2014 (Plaintiff's recommittal date) and March 12, 2014 (the IPBR hearing date). By contrast, Defendant's reading sensibly credits violators for time spent in custody, but not for time during which they were free yet determined not to be in compliance with the terms of their parole.

Finally, the Court is not convinced by Plaintiff's argument concerning subsection II(D)(1) of the Directive, which states in part that "[t]he issuance of a mandatory supervised release violation warrant tolls the running of a sentence credit." [87-7] at 2-3 (Admin. Dir. 01.07.424 II(D)(1)). Plaintiff interprets this provision to entitle him to credit for the time between when he first violated parole (September 1, 2013) and the date IDOC issued its violation report (January

8

23, 2014). But subsection II(D)(1) does not address how time *before* the issuing of a violation report is to be treated. Subsection II(D)(2) addresses that period. As determined above, subsection II(D)(2) requires that the time between the date the releasee is in violation of the conditions of his release and the date he is recommitted be considered "time lost" for sentencing credit purposes.

For these reasons, the Court concludes that Lawrence correctly calculated Plaintiff's release date by not including a credit for the period of September 1, 2013 (the date as of which the IPBR determined Plaintiff committed the first violation of his supervised release) and January 22, 2014 (when Plaintiff was returned to custody). Plaintiff was not deprived of any sentencing credit to which he had a statutory right. Therefore, he was not deprived of a protected liberty interest, his procedural due process claim fails as a matter of law, and Defendants are entitled to summary judgment.

**IV.  Conclusion**

For these reasons, Defendants' motion for summary judgment [95] is granted. Judgment will be entered in favor of Defendants Tejeda and Duncan and against Plaintiff. This order resolves all claims in the case. A final judgment consistent with Federal Rule of Civil Procedure 58 will be entered and this civil case will be terminated.

Dated: February 8, 2019

_____
Robert M. Dow, Jr.
United States District Judge